1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10

11  AUGUST HIMES, JR.,                    )   NO. CV 04-8899-MAN
                                          )
12                    Plaintiff,          )
          v.                              )   MEMORANDUM OPINION AND ORDER
13                                        )
                                          )
14  JO ANNE B. BARNHART,                  )
    Commissioner of the                   )
15  Social Security Administration,       )
                                          )
16                    Defendant.          )
    _____)
17

18       Plaintiff filed a Complaint on November 3, 2004, seeking review of

19  the denial by the Social Security Commissioner ("Commissioner") of

20  Plaintiff's claim for Supplemental Security Income benefits ("SSI").  On

21  November 30, 2004, the parties filed a "Consent to Proceed Before a

22  United States Magistrate Judge," pursuant to 28 U.S.C. § 636.  The

23  parties filed a Joint Stipulation ("JS") on September 21, 2005, in

24  which:  Plaintiff seeks an order reversing the Commissioner's decision

25  and awarding benefits or, alternatively, remanding the case for further

26  appropriate proceedings; and Defendant requests that the Commissioner's

27  decision be affirmed.   The Court has taken the parties' JS under

28  submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his application for SSI on April 3, 2002. (Administrative Record ("A.R.") 55-57.) Plaintiff claims to have been disabled since either January 1 or June 1, 2001, due to an adult antisocial disorder and pain in his left hand, right wrist, lower back, and right hip.[1] (A.R. 21, 71, 172-76.) He has no past relevant work experience. (A.R. 24, 84-86.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. (A.R. 33-41.) On July 23, 2003, Plaintiff, who was represented by counsel, appeared at a hearing before Administrative Law Judge Frederick Michaud ("ALJ"). (A.R. 168-90.) On November 19, 2003, in a written decision, the ALJ denied Plaintiff's claim for benefits. (A.R. 17-24.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on September 7, 2004. (A.R. 5-7.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his November 19, 2003 written decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (A.R. 23.) The ALJ determined that Plaintiff had a "severe" impairment of a missing left index finger, which did not meet or equal one of the listed impairments in Appendix 1, Subpart P,

---

[1]     In the Disability Report, Plaintiff noted that he became unable to work on January 1, 2001. (A.R. 71.) However, in his SSI application, Plaintiff reported that his disability began on June 1, 2001. (A.R. 55.)

Regulation No. 4.  (A.R. 20, 23.)[2]

        The ALJ further found that Plaintiff's complaints of disabling pain generally were not credible.  (A.R. 22, 24.)  He determined that Plaintiff had the residual functional capacity to perform a wide range

_____

        [2]  In the opening discussion and "Findings" portion of his decision, the ALJ stated, without discussion, that Plaintiff "is missing a left index finger and suffers from adult anti-social traits and a history of drug and alcohol abuse which are severe impairments." (A.R. 20, 23.)  However, in the body of his decision setting forth his analysis, the ALJ stated, "[w]ith regard to the claimant's mental condition, the ALJ finds that, at most, the claimant has adult anti-social traits and a history of drug and alcohol abuse, which are not severe impairments." (A.R. 21-22.)  The ALJ expressly noted that, in "making this determination," he relied on "the lack of medical treatment." (A.R. 22.)  With respect to Plaintiff's claim of adult antisocial traits, the ALJ relied on, and discussed, the opinions of Dr. Olayinka Kamson, a consultative examiner, and Dr. Robert Ferrell, a state agency physician. (*Id.*)  With respect to Plaintiff's history of drug and alcohol abuse, the ALJ found it was not material to the determination of disability, reasoning that if Plaintiff "were continuing to abuse drugs or alcohol and this were deemed material to any finding of disability, Public Law 104-121 would preclude payment of any benefits." (*Id.*)

        Due to the above-noted inconsistent language in the ALJ's decision, the parties disagree as to whether or not the ALJ found Plaintiff's adult antisocial traits and history of drug and alcohol abuse to be severe impairments at Step Two.  Plaintiff contends that the ALJ *did* find these impairments to be severe at Step Two.  (JS at 4-5, 13.)  The Commissioner reasons that no such finding was made, and the inconsistent reference to these matters as "severe" impairments was a harmless "scrivener's or clerical error." (JS at 10.)

        Based on a review of the ALJ's questioning at the hearing and his decision as a whole, it **appears** that the ALJ likely concluded that Plaintiff's adult antisocial traits and history of alcohol and drug abuse were not "severe" impairments, as he expressly discusses at pages 21-22 of his decision, and that the inconsistent references at pages 20 and 23 are clerical errors.  However, as discussed below, regardless of whether the ALJ did or did not find Plaintiff to have a "severe" mental impairment based on adult antisocial disorder, he committed several errors, and this case must be remanded in any event.  On remand, the ALJ must clarify his finding regarding Plaintiff's alleged mental impairment.

        Finally, the Court notes that Plaintiff claims mental impairment based only on adult antisocial disorder and not based on substance abuse.  Accordingly, the Court will analyze his claims on that basis.

3

of light exertional work.  (A.R. 23.)  Specifically, the ALJ found that Plaintiff: could lift/carry ten pounds frequently and twenty pounds occasionally, primarily with his right arm; could stand/walk for six hours cumulatively in an eight-hour workday; could frequently bend and crouch; and had a moderate limitation with repetitive fine and gross manipulation with his left hand.[3]  (A.R. 24.)  The ALJ also found that Plaintiff has a high school equivalency diploma (G.E.D.), is a "younger individual," and has no past relevant work experience.[4]  (*Id.*)  Based on Section 404.1569 of Regulations No. 4 and Rule 202.20 of the Medical-Vocational Guidelines at Appendix 2, Subpart P, Regulations No. 4, and supported by the testimony of the vocational expert, the ALJ determined Plaintiff to be not disabled.[5]  (*Id.*)  Accordingly, the ALJ found that Plaintiff was not entitled to the benefits sought under the Social Security Act.  (*Id.*)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial

---

[3]  At the hearing, the ALJ clarified the meaning of "moderate limitation" to mean that Plaintiff was limited to occasional use of his left hand for fine and gross manipulation.  (A.R. 186.)

[4]  Plaintiff was born on September 5, 1961, and was 42 years old at the time of the hearing.  (A.R. 20, 55.)

[5]  The vocational expert, Sandra Trost, testified that the hypothetical individual could perform work as a photo counter clerk (Dictionary of Occupational Titles ("DOT") 249.366-010) and call-out operator (DOT 237.367-014).  (A.R. 23, 187-88.)

evidence and applies the appropriate legal standards.  <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla but less than a preponderance - it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  <u>Desrosiers v. Sec'y. of Health & Human Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence.  *Id.* at 1039-40; *see also* <u>Morgan v. Commissioner of the Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Flaten v. Secretary of Health & Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff raises three claims:  (1) the ALJ failed to consider the medical evidence relating to Plaintiff's claimed mental impairment properly; (2) the ALJ propounded an incomplete hypothetical to the vocational expert, because the hypothetical did not include Plaintiff's

5

mental limitations; and (3) the ALJ improperly rejected Plaintiff's subjective symptom and pain testimony.

**A.**  **<u>The ALJ Erred In His Treatment Of Plaintiff's Claimed Mental Impairment</u>.**

In his Disability Report, Plaintiff checked "Yes" in response to the question "Have you been seen by a doctor/hospital/clinic or anyone else for emotional or mental problems that limit your ability to work," and listed Dr. Kenneth Baum, his parole psychologist, as the relevant treating doctor. (A.R. 73.) Plaintiff also indicated that his next scheduled appointment with Dr. Baum was in 16 days. (*Id.*)

The record before the ALJ contained the third psychological evaluation of Plaintiff conducted by Dr. Baum at the Parole Outpatient Clinic, which occurred on March 14, 2001.[6] (A.R. 118-19.) In his report, Dr. Baum noted the events that led to Plaintiff's most recent parole violation for failing to register as a sex offender. Specifically, Plaintiff reported that he was waiting at a bus when another person walked by and gave Plaintiff a "funny look." Plaintiff, in return, gave the other person a "funny look," which led to an argument and then a physical fight. Police officers arrived to stop the fight, and subsequently determined that Plaintiff had failed to register as a sex offender. (*Id.*) Dr. Baum also noted Plaintiff's extensive

---

[6]    Although it is unclear whether Dr. Baum conducted the other two evaluations, the record indicates that Plaintiff had previously met Dr. Baum. (A.R. 119.) The record does not contain any information on the treatment that Plaintiff received at the Parole Outpatient Clinic. However, at the hearing, Plaintiff asserted that he had received treatment at the clinic for "almost two years." (A.R. 181.)

6

1   criminal, alcohol use, and drug use history.[7]  (*Id.*)

2

3        Dr. Baum administered a mental status examination, which revealed

4   that Plaintiff had adult antisocial behavior, rule out paranoid

5   personality disorder, with a Global Assessment of Functioning score

6   ("GAF") of 59.[8]  (A.R. 119.)  Dr. Baum noted that Plaintiff was pleasant

7   and cooperative, partially due to his prior experience with Dr. Baum,

8   and did not appear to be guarded.  (*Id.*)  Dr. Baum also observed that:

9   Plaintiff's speech was tangential; his general fund of information was

10  poor; his logical thinking was impaired; he denied hallucinations and

11  delusions; he denied mood swings, depressed periods, or manic periods;

12  and his abstract thinking was intact.  (*Id.*)  Although Plaintiff denied

13  hallucinations and delusions, he believed that people, at times, talk

14  about him behind his back and may be plotting against him.  (*Id.*)

15  However, Dr. Baum did not find this to be a set delusional system.

16  (*Id.*)

17

18       Although Plaintiff stated that he was living in the community with

19  minimal problems, Dr. Baum determined that Plaintiff would likely have

20

21       [7]    Dr. Baum recorded that Plaintiff has ten prior arrests.  (A.R.
     118.)  Dr. Baum further commented on Plaintiff's history of using
22   cocaine, PCP, and alcohol on a regular basis.  (*Id.*)  However, Plaintiff
     denied any alcohol or substance abuse since 1987.  (*Id.*)

23       [8]    A GAF score is the clinician's judgment of the individual's
     overall level of functioning.   It is rated with respect only to
24   psychological, social, and occupational functioning, without regard to
     impairments in functioning due to physical or environmental limitations.
25   *See* American Psychiatric Association, <u>Diagnostic and Statistical Manual
     of Mental Disorders</u>, 32 (4th ed. 2000) (hereinafter "DSM IV").
26
         A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat
27   affect and circumstantial speech, occasional panic attacks OR moderate
     difficulty in social, occupational, or school functioning (e.g., few
28   friends, conflicts with peers or co-workers)."  DSM IV at 34.

difficulty with his aggressive impulses, considering the nature of the offense that led to his parole violation (*i.e.*, fighting because someone purportedly gave him a "funny look"). (A.R. 119.)  In addition, Dr. Baum opined that Plaintiff had paranoid proclivities that might lead to combativeness in the community in the future, as they have in the past. (*Id.*)  Consequently, he recommended that Plaintiff receive counseling once a month on an individual basis, as group counseling would be inappropriate. (*Id.*)  Dr. Baum noted that group counseling may be considered in the future. (*Id.*)

Dr. Olayinka Kamson performed a consultative psychiatric examination of Plaintiff on June 16, 2002, at the request of the state agency. (A.R. 120-23.)  Dr. Kamson found that Plaintiff: could understand, remember, and carry out simple instructions; would be able to respond to complex instructions; would be able to maintain adequate concentration for an eight-hour workday; and would be able to respond appropriately to supervisors, co-workers, and the general public. (A.R. 122.)  The psychiatrist diagnosed Plaintiff with polysubstance dependence, in remission, and personality disorder with antisocial traits. (A.R. 122.)  Dr. Kamson assessed Plaintiff's GAF at 70,[9] and labeled Plaintiff's psychiatric prognosis "fair." (A.R. 122-23.)

The state agency then requested a review by Dr. Robert Ferrell, a state agency psychiatrist. (A.R. 155.)  Dr. Ferrell filled out a

---

[9]     A GAF of 61-70 denotes "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationship)." <u>DSM IV</u> at 34.

Psychiatric Review Technique form (A.R. 132-45) after reviewing the above-described reports by Drs. Baum and Kamson (A.R. 144).  Dr. Ferrell found that Plaintiff would have mild difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence, or pace.  (A.R. 142.)  He also concluded that Plaintiff's mental impairments were not severe.  (A.R. 132.)

At the hearing before the ALJ, Plaintiff stated that he has a "psychiatric problem," which was diagnosed while he "did time with the State" and for which he received psychiatric care.  (A.R. 176.) Plaintiff testified that:  he "find[s] it kind of hard getting along with people on jobs, . . . because I'm always thinking there's some kind of conspiracy going on" (*id.*); with various jobs, he has had a "problem" "thinking there's some kind of conspiracy going on with the workers" (A.R. 177); and he generally doesn't have a problem with supervisors, but finds it "hard to get along with people on a job" (A.R. 178).

At step two of the Commissioner's sequential evaluation process, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments.  *See, e.g.,* <u>Smolen</u>, 80 F.3d at 1289-90.  "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" <u>Webb v. Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2006)(citation omitted).  "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims,' . . . and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Id.*

(*citing* <u>Smolen</u>, 80 F.3d at 1290, and Social Security Ruling 85-28).

As noted above, the ALJ's decision is inconsistent on the issue of whether he found Plaintiff's adult antisocial disorder to be a "severe" impairment at step two.  Based on the record as a whole, it appears to the Court that the ALJ did not find this mental impairment to be "severe."  Assuming this to be the case, the Court concludes that the ALJ erred under the foregoing standard.  The ALJ's reliance on the purported "lack of medical treatment" (A.R. 22) does not constitute substantial evidence in view of the evidence of record, set forth above, indicating that Plaintiff's claimed mental impairment met the *de minimis* threshold for finding "severity" under the Social Security regulations.[10] Remand on this basis alone, therefore, would be appropriate.  If, instead, the ALJ did find Plaintiff's adult antisocial disorder to be a "severe" impairment and thus committed no step two error, the ALJ then plainly erred in his treatment of the medical evidence relating to this impairment and in his hypothetical to the vocational expert.

**1.   <u>The   ALJ   Improperly   Rejected   The   Treating Psychologist's Opinion</u>.**

Plaintiff contends that the ALJ erred by improperly dismissing the opinion of Dr. Kenneth Baum, the treating psychologist. (JS at 6.) In

_____

[10]   Moreover, the ALJ's statement appears to be factually incorrect on the record before him.  Dr. Baum's report stated that Plaintiff was to be seen at the Parole Outpatient Clinic once a month on an individual basis, rather than in group counseling sessions.  (A.R. 119.)  In his Disability Report, Plaintiff listed Dr. Baum as his treating physician for his mental condition and stated that he was scheduled to see Dr. Baum in 16 days, indicating an ongoing treatment relationship.  (A.R. 73.)

particular, he argues that the ALJ did not even address Dr. Baum's opinion.  (JS at 8.)

Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Smolen, 80 F.3d at 1279; Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)(citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).  In the hierarchy of physician opinions considered in assessing a social security claim, a treating physician's opinion generally is afforded the most weight, followed by an examining physician's opinion, and then the non-treating, non-examining reviewing physician's opinion.  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001)("Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); 20 C.F.R. § 404.1527(d).  The Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of a treating physician.  Lester, 81 F.3d at 830. Even if the opinion of the treating physician is contradicted, it may be rejected "only for specific and legitimate reasons that are supported by substantial evidence of record."  Id. at 830-31; see also Andrews, 53 F.3d at 1043; Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993).

In the portion of his decision in which he states that Plaintiff's "adult anti-social traits and . . . history of drug and alcohol abuse . . . are not severe impairments" (A.R. 122), the ALJ expressly addressed and relied on the opinions of Drs. Kamson and Ferrell.  The opinion of

Dr. Kamson, a consulting psychiatrist, was not consistent with that of Dr. Baum, a treating psychologist, in several salient respects, including with respect to GAF score, diagnosis, and, impliedly, as to Plaintiff's ability to interact with others in a group work setting. The opinion of Dr. Ferrell, the state agency reviewing psychiatrist, also was not consistent with the opinion of Dr. Baum.  In view of these inconsistencies, in order to adopt the opinions of the consulting and non-examining psychiatrists and reject the opinion of Dr. Baum, the ALJ was required to set forth specific and legitimate reasons for doing so based on substantial evidence.

The ALJ failed entirely to acknowledge the existence of Dr. Baum's opinion, much less discuss it.  Although the ALJ's reliance on the opinion of Dr. Ferrell, who reviewed Dr. Baum's opinion, may have been an indirect rejection of Dr. Baum's opinion, the Court can only speculate in this respect, given the ALJ's failure to even mention Dr. Baum's opinion.  In any event, the ALJ plainly failed to meet his obligation to provide specific and legitimate reasons, supported by substantial evidence of record, for his complete disregard of Dr. Baum's opinion.  That failure was reversible error.

2.  **The ALJ Must Propound A Complete Hypothetical To The Vocational Expert**.

Plaintiff claims that the ALJ's hypothetical given to the vocational expert was erroneous, because it failed to include any mental limitations based on Plaintiff's adult antisocial disorder.  (JS at 16-18.)  It may be that the ALJ omitted any such limitations from the

12

hypothetical propounded to the vocational expert due to his failure to consider Dr. Baum's opinion and his finding that Plaintiff's claimed mental impairment was not severe.[11]   Whatever the cause, that omission was error.

In order for the vocational expert's testimony to constitute substantial evidence, an ALJ must pose hypothetical questions that "consider all of the claimant's limitations." <u>Andrews</u>, 53 F.3d at 1044. "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the 'expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" <u>Matthews v. Shalala</u>, 10 F.3d 678, 681 (9th Cir. 1993) (quoting <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 850 (9th Cir. 1991)). Thus, in posing a hypothetical to a vocational expert, the ALJ must accurately reflect all of the claimant's limitations. <u>Embrey v. Bowen</u>, 849 F.2d 418, 422-24 (9th Cir. 1987). However, the ALJ is not required to include limitations for which there is no evidence. *See* <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

For the reasons set forth above, the ALJ erred in apparently finding Plaintiff's claimed mental impairment to be non-severe and in ignoring Dr. Baum's opinion, which, if accepted, indicated the presence of several mental limitations. Moreover, Dr. Ferrell's opinion, which the ALJ otherwise accepted, also included two "mild" mental limitations. *See* 20 C.F.R. § 416.945(c)(describing mental limitations that must be

_____
[11]   The only limitations the ALJ included in his hypothetical posed to Sandra Trost, the vocational expert, were physical, namely, the exertional limitations found by Dr. Kenneth Boddie, a consulting orthopedist. (A.R. 185-86; *see also* A.R. 21, 129.)

1   considered when making a mental residual functional capacity assessment,

2   including "limitations in understanding, remembering, and carrying out

3   instructions and in responding appropriately to supervision, coworkers,

4   and work pressures in a work setting").   Additionally, as discussed in

5   Section B below, the ALJ erred in rejecting Plaintiff's subjective

6   symptom testimony regarding his mental impairment.   In SSI cases, when

7   assessing a claimant's residual functional capacity, an ALJ must

8   "consider the limiting effects of all of [the claimant's] impairment(s),

9   even those that are not severe."   20 C.F.R. § 416.945(e).   The ALJ,

10  therefore, erred in failing to include these matters in the hypothetical

11  propounded to the vocational expert.

12

13      On remand, should the ALJ find it appropriate to obtain further

14  testimony of a vocational expert, he must include in his hypothetical

15  *all* of Plaintiff's limitations, both mental and physical.

16

17  **B.   The ALJ Failed To Consider Plaintiff's Subjective Symptom**

18  **Testimony Properly**.

19

20      Plaintiff complains that the ALJ failed to provide legally

21  sufficient reasons to reject Plaintiff's subjective symptom testimony

22  allegations.   (JS at 20-23.)

23

24      The law is well-settled that, once a disability claimant produces

25  objective medical evidence of an underlying impairment, the ALJ may not

26  discredit the claimant's testimony as to his subjective symptoms merely

27  because they are not corroborated by objective evidence.   Tonapetyan,

28  242 F.3d at 1147-48; Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir.

14

1991); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1985).  As the Ninth
Circuit has explained:

> [A]n ALJ's finding that a claimant generally lacked
> credibility is a permissible basis to reject excess pain
> testimony.  But, because a claimant need not present clinical
> or diagnostic evidence to support the severity of his pain,
> *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990)
> (stating that "it is the very nature of excess pain to be out
> of proportion to the medical evidence"), a finding that the
> claimant lacks credibility cannot be premised wholly on a lack
> of medical support for the severity of his pain.

Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997).

Unless the evidence suggests affirmatively that a claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's excess pain or symptom testimony, such as conflicts between the claimant's testimony and conduct, or internal contradictions in the claimant's testimony. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Light, 119 F.3d at 792.  In determining whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider:  "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily

15

1  activities." <u>Smolen</u>, 80 F.3d at 1284.

2

3      The Court will give great weight to the ALJ's credibility
4  assessment. <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990);
5  <u>Brawner v. Secretary</u>, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that
6  the ALJ's credibility determination is to be given great weight when
7  supported specifically).  However, when an ALJ's decision rests on a
8  negative credibility evaluation, "the ALJ must make findings on the
9  record and must support those findings by pointing to substantial
10 evidence on the record." <u>Cequerra v. Secretary</u>, 933 F.2d 735, 738 (9th
11 Cir. 1991); <u>Oreteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995)(the
12 ALJ's findings must be "sufficiently specific to permit the reviewing
13 court to conclude that the ALJ did not arbitrarily discredit the
14 claimant's testimony.")

15

16     As described earlier, Plaintiff testified about his difficulties
17 getting along with coworkers, due to his belief that they may be
18 "conspiring" against him. (A.R. 176-78.)  Plaintiff also testified that
19 he suffers from pain in his left hand, right wrist, lower back, right
20 knee, and right hip. (A.R. 174-75, 179.)  He stated that a 1982 gunshot
21 wound to his left hand resulted in the amputation of his left index
22 finger. (A.R. 172.)  Plaintiff asserted that the gunshot wound has left
23 his middle finger "messed up," and he feels pain "when [he] tr[ies] to
24 lift something heavy." (A.R. 173-74.)  He elaborated that he currently
25 has pins placed in one of the joints of his middle finger, and he was
26 "supposed to be getting another operation" to remove the pins. (A.R.
27 173-74, 179-80.)  Additionally, Plaintiff testified that he suffered a

28

16

stab wound to his right wrist in 1985,[12] and his wrist hurts "when [he] lift[s] too much [weight]."  (A.R. 174.)  He testified that he could: walk for about 10 to 20 minutes; continuously sit for about 30 minutes; continuously stand for about 10 or 15 minutes; and lift about 25 pounds with both of his hands.  (A.R. 182-83.)

     With respect to Plaintiff's mental limitations testimony, the ALJ ignored it and failed to provide any reason for rejecting it.   The objective medical evidence -- *e.g.,* Dr. Baum's opinion and the "mild" limitations found by Dr. Ferrell -- provided a basis for, and tended to support, this testimony.   Therefore, the ALJ improperly ignored this testimony and was required to set forth clear and convincing reasons for rejecting it.  *See* <u>Smolen</u>, 80 F.3d at 1284.[13]

     With respect to Plaintiff's physical limitations and pain testimony, the ALJ cited three reasons for finding Plaintiff's assertion that he is unable to work to be not credible:  Plaintiff's "poor work history which reflects poorly on [his] motivation to work"; the objective medical findings "are not suggestive" of the level of severity to which Plantiff testified; and the "level of treatment" Plaintiff received also does not support the testimony.  (A.R. 22.)

---

     [12]   Plaintiff mistakenly states, in the Disability Report, that he was stabbed in his left wrist.  (A.R. 71.)

     [13]   As noted earlier, the ALJ cited to the purported "lack of medical treatment" as a reason for finding Plaintiff's adult antisocial disorder to be non-severe.  (A.R. 22.)  To the extent the ALJ rejected Plaintiff's mental limitation on this same basis, he did not say so. Moreover, as observed earlier, the ALJ's stated reason is not factually correct.  Thus, it is neither legitimate nor convincing.

17

A claimant's poor work history may serve as a basis for finding that a claimant has little propensity to work and, thus, is not credible.  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002).  The record does reflect that Plaintiff has been employed only for a total of approximately two and a half to three years during the period 1982 to 1998, and has had minimal earnings.  (A.R. 84, 184-85.)  The ALJ, however, failed to account for the fact that Plaintiff is an ex-convict who has sustained numerous convictions and has been incarcerated at least four times.  (A.R. 118, 122, 176.)  The record does not reflect when he was incarcerated and for how long, but it is reasonable to assume that Plaintiff spent at least some significant portion of the above time period in prison.  Thus, the ALJ's assumption that Plaintiff's failure to work throughout this period was purely the result of a lack of motivation is unsupported and is neither legitimate nor convincing.

The ALJ's conclusion that the objective medical findings do not support Plaintiff's claimed pain and physical limitations also is not convincing.  The ALJ expressly noted, and relied on, the opinion of Dr. Boddie, the consulting orthopedist.  Based on his June 21, 2002 evaluation, Dr. Boddie found that Plaintiff's back and right hip pain was secondary to strains within the right sacroiliac joint, and there was no evidence of any significant radiculopathy affecting the lower extremities.  However, Dr. Boddie noted that degenerative disc disease and degenerative joint disease of the lumbar spine could not be ruled out.  (A.R. 129.)  He also determined that Plaintiff's right wrist pain was secondary to a strain, and Plaintiff's left hand pain was primarily secondary to Plantiff's retained Steinmann pins from the fixation of a

18

1  fracture in his middle finger.  (*Id.*)  Dr. Boddie found probable

2  ankylosis (*i.e.*, stiffening and immobility of a joint) of the proximal

3  interphalangeal joint secondary to Plaintiff's lack of follow-up for the

4  removal of the pins. (*Id.*)  He also noted that there was mild traumatic

5  degenerative joint disease within the metacarpophalangeal joint. (*Id.*)

6

7       Dr. Boddie opined that the removal of the pins may significantly

8  increase the range of motion within Plaintiff's left hand, particularly

9  if a synovectomy within the metacarpophalangeal or proximal

10 interphalangeal joint is also performed.  (A.R. 129.)  Plaintiff's

11 prognoses for his right wrist, back, and right hip were deemed fair to

12 good, while his prognosis for his left hand was assessed as poor. (*Id.*)

13

14      X-rays of Plaintiff's right hand reflected normal findings, other

15 than for two metallic fragments overlying the head of the first

16 metacarpal. (A.R. 131.)  X-rays of his left hand, however, reflected

17 abnormal results, displaying evidence:  of a gunshot wound with

18 fragments of bone overlying the soft tissues of the palm; and that

19 Plaintiff's index finger and his second metacarpal were missing. (*Id.*)

20

21      These objective medical findings provided support for Plaintiff's

22 claimed pain and physical limitations, and the ALJ's assertion that

23 there was an "absence of objective medical evidence to support

24 [Plaintiff's] allegations" (A.R. 22) is not legitimate.  To the extent

25 that, by this comment, the ALJ was of the view that the severity of

26 Plaintiff's claimed pain should not be believed absent clinical or

27 diagnostic proof establishing such a level of severity, this was

28 improper, as it is error to require a claimant to adduce objective

medical evidence to support the severity of his asserted pain or symptoms. *See* Tonapetyan, 242 F.3d at 1147-48; Bunnell, 947 F.2d at 345; Fair, 885 F.2d at 601; *see also* Cotton, 799 F.2d at 1407 ("'Excess pain' is, by definition, pain that is unsupported by objective medical findings.").

Finally, while the level of treatment a claimant received may suffice as a reason to find a claimant not credible (*see, e.g.,* Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999)), it does not do so in this case.  The ALJ does not identify the treatment Plaintiff received and why, in the ALJ's view, it was so inadequate or minimal that it warranted disbelieving Plaintiff.  The ALJ, thus, did not comply with the requirement that sufficiently specific findings, rather than general findings, be made in order to reject a claimant's subjective symptom testimony as not credible.  *See* Oreteza, 50 F.3d at 75; Swenson v. Sullivan, 876 F.2d 683, 688 (9th Cir. 1979).  Moreover, Plaintiff has been incarcerated and clearly has not been regularly employed; consequently, he may not have had the finances to seek more aggressive treatment.  *See* Gamble v. Chater, 68 F.3d 319, 320-22 (9th Cir. 1995)(failure to obtain treatment, even if the alleged condition is remediable, is not a sufficient reason to deny benefits where the claimant suffers from financial hardships); Social Security Ruling 82-59 (a person who otherwise meets the disability criteria may not be denied benefits for failing to obtain treatment that he cannot afford).  *See also* Smolen, 80 F.3d at 1284 (claimant's inability to pay for medication provided a valid reason for her failure to obtain medication).

For the reasons set forth above, the ALJ's failure to provide clear

20

1 and convincing reasons for rejecting Plaintiff's testimony as to his
2 pain and physical and mental limitations constitutes reversible error.

3

4 **C.**   **Remand Is Appropriate**.

5

6     When the Court has found that evidence, such as physician opinion
7 and/or claimant testimony, has been improperly rejected by the ALJ based
8 on inadequate reasons, the evidence should be credited and an immediate
9 award of benefits directed, rather than a remand for further
10 proceedings, when: "(1) the ALJ failed to provide legally sufficient
11 reasons for rejecting the evidence; (2) there are no outstanding issues
12 that must be resolved before a determination of disability can be made;
13 and (3) it is clear from the record that the ALJ would be required to
14 find the claimant disabled were such evidence credited." Benecke v.
15 McCarthy, 379 F.3d 587, 593 (9th Cir. 2004); *see also* Harman v. Apfel,
16 211 F.3d 1172, 1178 (9th Cir. 2000); Smolen, 80 F.3d at 1292.

17

18     The first element is satisfied in this case given, for the reasons
19 set forth above, that the ALJ improperly rejected the opinion of Dr.
20 Baum and failed to state a legitimate basis for finding Plaintiff not
21 credible. Significantly, even if there were evidence of record "upon
22 which the ALJ legitimately could have rejected" the opinion of Dr. Baum
23 and/or that justified finding Plaintiff's testimony not credible, it
24 would not matter, for, if the above test is met, remand for payment of
25 benefits "is warranted regardless of whether the ALJ *might* have
26 articulated" such a justification. Harman, 211 F.3d at 1178-79. *See*
27 *also* Benecke, 379 F.3d at 593 (when the test is met, remand is not
28 warranted in order to allow the ALJ to make specific findings regarding

a claimant's subjective symptom testimony).  When the first element is met, the Court must credit the subject evidence as true.  *Id.* at 593-94; Lester, 81 F.3d at 834.

Thus, crediting the rejected opinion of Dr. Baum and rejected testimony of Plaintiff as "true," the next questions are:  whether there are any outstanding issues that must be resolved before a determination of disability can be made; and whether it is clear from the record that the ALJ would be required to find Plaintiff disabled had he properly credited such evidence.  Benecke, 379 F.3d at 594.  On the present record, the Court cannot answer these questions affirmatively.  The question Plaintiff's counsel put to the vocational expert misstated the limitations evidenced by the record.  Counsel asked the vocational expert whether a person with "no tolerance for contact with coworkers or supervisors" could perform those jobs, and the expert answered "no." (A.R. 188.)  However, Plaintiff did not testify that he had "no tolerance" for coworkers or supervisors; indeed, he opined that he had no problem with supervisors, and his asserted issues with coworkers cannot necessarily be construed as equating to having "no tolerance" for them.  (A.R. 177-78.)  Moreover, neither Dr. Baum nor Dr. Ferrell opined that mental limitations exist as severe as those set forth in counsel's question.  Thus, there is no creditable vocational expert testimony of record bearing on the effect of Plaintiff's actual mental limitations on the jobs available in the workforce.

Accordingly, as outstanding issues remain, remand for further proceedings, rather than an award of benefits, is appropriate.  *See* Benecke, 379 F.3d at 593 (where ALJ erred by discounting treating

22

physicians' opinions, remand for further proceedings is appropriate if enhancement of the record would be useful); Higbee v. Sullivan, 975 F.2d 558, 561-62 (9th Cir. 1991)(remanding case in order to develop the record); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 27, 2006

_____/s/_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

23